**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**

In re:

**Case No. 26-109850-CAP**
Chapter 7

**BENJI URRA and ANGELA E. URRA,**

Debtors.
______________________________________/

**Adversary Proceeding No. 26-01151-CAP**

**OCEAN BANK,**

Plaintiff,

v.

**BENJI URRA and ANGELA E. URRA,**

Defendants.
______________________________________/

**DEFENDANTS' MOTION FOR SANCTIONS PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9011 FOR FILING AND CONTINUING TO ADVOCATE FACTUALLY UNSUPPORTED FRAUD ALLEGATIONS**

Defendants, BENJI URRA and ANGELA E. URRA (collectively, "Defendants"), pursuant to Federal Rule of Bankruptcy Procedure 9011, move for the imposition of sanctions against Plaintiff, OCEAN BANK ("Ocean Bank"), and the attorneys responsible for filing and continuing to advocate the challenged allegations, and state as follows:

## INTRODUCTION

This adversary proceeding should not have been filed. Ocean Bank seeks to except a multimillion-dollar commercial debt from discharge by alleging that Defendants obtained a $5,000,000 floor-plan loan through false pretenses, false representations, actual fraud, and a materially false written financial statement. Yet Ocean Bank's own documents and Rule 30(b)(6)

testimony establish that the two principal factual allegations supporting its fraud claims, the alleged failure to obtain a Quick Shift subordination and the alleged concealment of a mortgage, were directly contradicted by information already possessed by Ocean Bank and its attorneys before the loan was funded and before this adversary proceeding was filed.

First, Paragraph 11 alleges that Defendants promised to subordinate Quick Shift Capital LLC's security interest, "but they never filed or caused to be filed the required paperwork." That allegation is contradicted by the fully executed Intercreditor and Subordination Agreement in Ocean Bank's own files. A copy of which is attached hereto as Exhibit "A". Ocean Bank's loan counsel approved the precise method of subordination, the fully executed agreement, which was drafted by Ocean Banks own attorney, was attached to Quick Shift's lawsuit against Ocean Bank, and the same litigation counsel who filed this adversary proceeding was already representing Ocean Bank in the Quick Shift action. When confronted with the agreement, Ocean Bank's designated representative was forced to "backtrack" and admitted: "Now that I have the document in front of me, I'll go back and say I guess we do have a subordination agreement." Moussa Dep. 79:12–80:20.

Second, Paragraph 14 alleges that Defendants submitted a materially false personal financial statement by omitting a mortgage on commercial real estate and that Ocean Bank reasonably relied upon that omission in making the loan. The contemporaneous closing record proves that Ocean Bank and its attorney knew about the mortgage before the loan closed.

The mortgage appeared in a report reviewed by Ocean Bank's loan counsel before closing. The report identified the mortgage, the mortgaged property, and the public-record location where the encumbrance could be found. Ocean Bank's Rule 30(b)(6) witness expressly

admitted that Ocean Bank's attorneys possessed information showing the mortgage before the loan was funded. Moussa Dep. 89:15–91:9.

The evidence goes further. In a written email sent before closing, Ocean Bank's attorney specifically addressed the encumbrance and wrote that it "[s]eems to be limited to a specific property" and "[s]hould be ok." Ocean Bank's representative admitted that its attorney reviewed the materials, knew the encumbrance existed, and placed his conclusion in writing. The email copied Ocean Bank's account officer and Ocean Bank's attorney and closing manager. Ocean Bank nevertheless closed and funded the loan. Moussa Dep. 91:10–94:15.

A lender cannot be deceived by information already known to it. Nor can it reasonably rely upon an omission its own attorney identified, evaluated, circulated to the Bank, and expressly approved before closing. Paragraph 14 is not merely weakened by the deposition. It is contradicted by Ocean Bank's contemporaneous closing documents and by its own sworn testimony.

The remaining allegations reveal the same pattern. Ocean Bank alleged personal representations concerning AFC and inventory locations that its corporate representative could not identify. It alleged fraudulent concealment of a Texas dealership acquisition and pending litigation even though it never asked about those matters or determined they materially affected Benji Auto. It further characterized ordinary floor-plan timing and reconciliation practices as evidence of fraud even though its own witness admitted that a vehicle may already be sold and titled while the dealer is still awaiting retail funding, that pre-funding inventory audits are customary, and that monthly audits exist to identify sold vehicles and require their payoff.

This Motion is therefore not based merely upon an unprepared witness or conflicting evidence. Ocean Bank alleged fraud based upon facts contradicted by information already

possessed by the Bank and its attorneys, alleged representations it cannot identify, and treated ordinary commercial lending practices as intentional deception. Rule 9011 does not permit a creditor to accuse debtors of fraud first and investigate later.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. The Loan and the Adversary Complaint

On or about April 17, 2025, Ocean Bank extended a $5,000,000 floor-plan line of credit to Benji Auto Sales Corp. ("Benji Auto") for the purpose of refinancing inventory then financed by Automotive Finance Corporation ("AFC"). Defendants personally guaranteed Benji Auto's obligations.

After Benji Auto later defaulted, Ocean Bank obtained a state-court judgment against Benji Auto. Defendants thereafter filed their Chapter 7 case.

On May 4, 2026, Ocean Bank commenced this adversary proceeding under 11 U.S.C. §§ 523(a)(2)(A) and (B). Ocean Bank alleges that Defendants knowingly induced the loan through false representations and omissions concerning AFC, inventory locations, lien priority, Benji Auto's financial condition, a Texas dealership acquisition, pending litigation, Quick Shift's security interest, and a mortgage allegedly omitted from Defendants' personal financial statement.

Ocean Bank's allegations seek far more than enforcement of a commercial guaranty. Ocean Bank seeks a determination that Defendants personally committed fraud and that the resulting debt should permanently survive bankruptcy.

### B. Ocean Bank's Rule 30(b)(6) Representative Confirmed the Complaint Before Contradicting Its Central Allegations

Defendants noticed Ocean Bank's corporate deposition regarding the factual bases for the Complaint. Ocean Bank designated Joseph Moussa, its vice president and senior workout specialist.

Mr. Moussa testified that he was selected as Ocean Bank's representative with the most knowledge regarding the allegations in the adversary Complaint and was appearing in that capacity. He prepared by reviewing AFC discovery, borrowing-base information, Ocean Bank's original loan materials, the borrower affidavit, and the Complaint, and by conferring with Ocean Bank's counsel. Moussa Dep. 7:16–9:7.

After being given an opportunity to review the entire Complaint, Mr. Moussa testified that its allegations were true and accurate and that he had "100 percent reviewed" the pleading and determined each allegation was true. After counsel objected that the Complaint contained legal conclusions, Defendants narrowed the question to the factual allegations, and Mr. Moussa again confirmed that each factual allegation was accurate and true. Moussa Dep. 11:2–13:2.

Ocean Bank therefore cannot dismiss the testimony as the personal speculation of an uninformed employee. Mr. Moussa testified on behalf of Ocean Bank, after reviewing the pleading, about the very allegations Ocean Bank certified to this Court.

## OCEAN BANK FILED AND CONTINUES TO ADVOCATE FRAUD ALLEGATIONS CONTRADICTED BY ITS OWN DOCUMENTS AND TESTIMONY

### A. Rule 9011 Violation No. 1: Ocean Bank and Its Counsel Alleged the Required Quick Shift Subordination Was Never Completed While Possessing the Fully Executed Agreement

Paragraph 11 alleges that "Benji Auto and Defendants promised to subordinate a security interest granted to Quick Shift Capital LLC ('Quick Shift'), but they never filed or caused to be

filed the required paperwork." Ocean Bank pleaded this as an objective historical fact and used it to support its contention that Defendants intentionally created a false impression regarding lien priority.

The allegation is contradicted by the fully executed Intercreditor and Subordination Agreement already possessed by Ocean Bank and its counsel.

During the deposition, Defendants marked as an exhibit Quick Shift's counterclaim against Ocean Bank. That pleading attached the fully executed Intercreditor and Subordination Agreement. Mr. Moussa recognized the document and read its title aloud. When confronted with his prior testimony, he responded, "Let me backtrack then," and admitted: "Now that I have the document in front of me, I'll go back and say I guess we do have a subordination agreement." Moussa Dep. 79:12–80:9.

Mr. Moussa then confirmed that Peter Tappert, the attorney representing Ocean Bank at the deposition and counsel who filed this adversary proceeding, was also representing Ocean Bank in the state-court litigation brought by Quick Shift. He further confirmed that the Quick Shift pleading attaching the agreement had been filed before Ocean Bank filed this adversary Complaint. Moussa Dep. 80:14–81:8.

The contradiction is compounded by the contemporaneous closing record. In a March 24, 2025 email copied to Ocean Bank personnel, Ocean Bank's loan counsel expressly stated that the Quick Shift interest "is part of the bank's approval and will be subordinated via Intercreditor agreement." Mr. Moussa admitted that this method of subordination was approved and authorized by Ocean Bank. Moussa Dep. 84:12–85:8.

Thus, before this adversary proceeding was filed, Ocean Bank's loan counsel approved subordination through an Intercreditor Agreement; the agreement was fully executed; Ocean

Bank possessed it; the agreement was attached to Quick Shift's state-court pleading against Ocean Bank; the attorney who filed this adversary proceeding was already representing Ocean Bank in that action; and Ocean Bank nevertheless alleged that Defendants never filed or caused the required subordination paperwork to be completed.

No discovery was required to reveal the contradiction. The agreement was in Ocean Bank's file, in its counsel's possession, and already at issue in pending litigation handled by the same lawyer who filed this adversary proceeding. Rule 9011 required review of those materials before fraud was alleged. Paragraph 11 is contradicted by Ocean Bank's own agreement, its own transactional correspondence, its own pending litigation file, and its own Rule 30(b)(6) testimony.

**B. Rule 9011 Violation No. 2: Ocean Bank Alleged Concealment of a Mortgage Its Attorney Identified, Evaluated, and Approved Before Closing**

Paragraph 14 of the Complaint alleges that "[a] personal financial statement submitted by Defendants to Ocean Bank materially omitted a mortgage on commercial real estate that would have negatively affected the net worth claimed by Defendants." Ocean Bank further alleges reasonable reliance and intent to deceive. Those allegations cannot be reconciled with Ocean Bank's contemporaneous knowledge.

The Personal Financial Statement identified during the deposition was dated May 31, 2024. Ocean Bank did not make the loan until April 2025, nearly one year later. Mr. Moussa conceded both facts. Moussa Dep. 35:8–36:5.

More importantly, before the April 2025 closing, Ocean Bank's attorney received and reviewed a report expressly identifying the mortgage. The report described a purchase-money mortgage and security agreement granted by Benji and Angela Urra on the specific property and identified the public-record location where it could be found.

> Q. You would agree that as of March, which is before you entered the loan, right, and gave the loan, that you were aware of the mortgage, correct?
>
> A. Yes, I would agree that our lawyers had information there was a mortgage. *Moussa Dep. 90:2–11.*

Ocean Bank's counsel did not merely receive the information. He evaluated it. In a pre-closing email, counsel specifically addressed the encumbrance and wrote: "Seems to be limited to a specific property. Should be ok."

> Q. So, you would agree that your lawyer reviewed these documents, correct?
>
> A. Yes, I agree that he must have reviewed it.
>
> Q. And you agree that he knew there was an encumbrance on the property, correct?
>
> A. Yes, he knew.
>
> Q. And you would agree that he said it should be okay, correct?
>
> A. Well, that's what he put in writing. *Moussa Dep. 91:22–92:13.*

The email was not an isolated communication between outside counsel and Defendants. It copied Javier Perez, Ocean Bank's account officer for the loan, and Mike Carroll, identified by Ocean Bank's witness as one of the Bank's attorneys and its closing manager. Mr. Moussa admitted both Ocean Bank representatives were copied. Moussa Dep. 94:7–15.

Ocean Bank then closed and funded the loan. Its witness admitted that the Bank proceeded despite knowing the property was encumbered. He further admitted that, once Ocean Bank knew of the encumbrance, its amount could easily have been determined through a public-record search and the Bank could have asked any additional question it considered necessary. Moussa Dep. 92:15–93:17.

Accordingly, before funding the loan, Ocean Bank's counsel possessed a report identifying the mortgage; the report identified the property and public-record location; counsel reviewed the information; counsel wrote that the encumbrance "should be ok"; Ocean Bank's

account officer and closing manager were copied; and Ocean Bank proceeded to close and fund the loan.

These facts negate the Complaint's assertion that Ocean Bank was deceived by the omission and reasonably relied upon the mortgage's supposed absence. Ocean Bank cannot avoid its actual knowledge by asserting it may not have known the precise balance. Paragraph 14 of the Complaint alleges concealment of the mortgage, not concealment of a particular balance. The Bank knew the mortgage existed, its attorney evaluated it, and the Bank funded the loan.

Nor can Ocean Bank plausibly maintain that it reasonably relied on a nearly year-old financial statement as establishing the absence of a later encumbrance while its own closing investigation disclosed that encumbrance before funding. No reasonable pre-filing inquiry could have concluded that Ocean Bank was unaware of the mortgage or relied upon its absence.

### C. Rule 9011 Violation No. 3: Ocean Bank Alleged Representations About AFC "Good Standing" That It Cannot Identify

Paragraph 9 of the Complaint alleges that Ocean Bank relied upon Defendants' representation that Benji Auto was in good standing with AFC. When asked where that representation was made, Mr. Moussa initially responded that Defendants "never told us that they were out of compliance with AFC." That is not an affirmative representation; it is an alleged failure to volunteer information.

When asked who made the supposed statement, when it was made, and where it appeared, Mr. Moussa could not answer. He asserted generally that it was "part of the documents," but could not identify which document. Moussa Dep. 63:2–64:5.

When asked whether he was aware of any oral representation by either Benji or Angela Urra that Benji Auto was in good standing with AFC, he answered, "No, I'm not aware." He

likewise could not identify a written document containing the representation. Moussa Dep. 64:1–65:21.

Ocean Bank therefore alleged that both Defendants made a material representation but could not identify who made it, when it was made, whether it was oral or written, where it appears, the words used, or any evidence that either Defendant made any representation concerning AFC. Rule 9011 does not permit a creditor to plead that a debtor "represented" a fact when it cannot identify any statement communicating that fact.

**D. Rule 9011 Violation No. 4: Ocean Bank Alleged Defendants Represented All Inventory Was Physically at Two Dealerships, but Its Witness Could Identify No Such Representation**

Paragraph 9(2) alleges that Defendants represented that "all the vehicles in the existing inventory were at Benji Auto's West Park and Orlando dealership locations." Ocean Bank's designated witness could not identify the alleged representation.

When asked whether it was oral or written, he responded that he was not part of the oral discussions and assumed it would appear in documents. When asked which document contained it, he answered that he did not have the documents. When asked whether it appeared in the loan documents, he stated, "Don't know," and then, "I don't recall." Moussa Dep. 67:8–69:3.

Mr. Moussa later acknowledged that, as Ocean Bank's designated representative, he was unaware of any oral representation by either Defendant that all inventory was at the two dealership locations. His eventual answer was that Ocean Bank received a report identifying vehicles supposedly on the lot. Moussa Dep. 69:7–71:19.

A third-party inventory or borrowing-base report is not automatically a personal representation by Benji Urra, much less Angela Urra. Before alleging fraud, Ocean Bank was required to determine who prepared the report, what it represented, the date as of which it was

accurate, whether "inventory" included vehicles in transit or work in process, and what Ocean Bank's own due diligence revealed.

### E. Rule 9011 Violation No. 5: Ocean Bank Alleged a Material Adverse Change Based on a Texas Acquisition It Never Investigated

Paragraph 11 alleges that Defendants failed to disclose that they were acquiring a Nissan dealership in Texas, and Ocean Bank uses that event to support Paragraph 9(4)'s allegation of a material adverse change in Benji Auto's financial condition.

Mr. Moussa admitted that Benji Auto itself was not acquiring the dealership; its principals were. He further admitted that he did not know whether the acquisition changed Benji Auto's financial condition. Moussa Dep. 41:16–43:11.

Ocean Bank also had no information establishing that Benji Auto contributed any money toward the acquisition, it didn't. When asked whether he knew Benji Auto paid zero dollars toward the purchase, Mr. Moussa answered: "No, we don't have all that information yet." Moussa Dep. 43:18–25.

More significantly, Ocean Bank never asked. When repeatedly asked whether the Bank inquired about the acquisition, Mr. Moussa ultimately admitted: "Again, we did not ask them that." Moussa Dep. 44:1–15.

Ocean Bank cannot establish fraudulent concealment by pointing to information it never requested. Nor can it establish materiality by assuming an acquisition by individual principals must have been funded by Benji Auto. A reasonable inquiry required Ocean Bank to determine who acquired the dealership, who paid the purchase price, whether Benji Auto contributed funds, whether the transaction increased Benji Auto's liabilities, and whether it caused any measurable adverse change. Ocean Bank had none of those facts when it filed.

### F. Rule 9011 Violation No. 6: Ocean Bank Treated the Truist Lawsuit as Fraudulent Concealment Although It Never Asked About Lawsuits or Established Materiality

Ocean Bank's representative identified a pending Truist Bank lawsuit as another allegedly undisclosed material event. Yet Ocean Bank never established that Defendants falsely answered a question about litigation. Mr. Moussa testified only that the Bank "expected" borrowers to volunteer pending lawsuits and admitted he was not involved in origination and could not testify that the question was asked. Moussa Dep. 45:11–46:18.

The Truist action had been pending for years without meaningful prosecution. Defendants maintain that the action was immaterial, lacked factual merit, and produced no material effect on Benji Auto's financial condition. Ocean Bank's representative identified no contrary financial analysis, probable-loss calculation, litigation assessment, or evidence that the action would have caused Ocean Bank to decline the loan.

Mr. Moussa testified only that a pending lawsuit would have to be reviewed. That admission confirms that the mere existence of litigation was not automatically material or disqualifying. It required examination of the claims, procedural posture, merits, potential exposure, and effect on the borrower. Ocean Bank identified no evidence that it conducted that analysis before filing this adversary proceeding.

Rule 9011 requires more than hindsight speculation that an old lawsuit might have mattered. It requires evidentiary support for the factual contention actually pleaded.

### G. Rule 9011 Violation No. 7: Ocean Bank Mischaracterized Sold Vehicles, Uncompleted Retail Funding, and the Ordinary Audit Process as Fraud

Ocean Bank alleges that vehicles were "missing" because some vehicles appearing on AFC's inventory report had already been sold, financed, or titled to retail purchasers when Ocean Bank refinanced the AFC floor plan. That circumstance did not establish fraud.

Ocean Bank's own testimony established that a vehicle may already have been sold and titled to a retail purchaser even though the dealer has not yet received the retail lender's funds. When asked whether Ocean Bank knew Benji Auto had actually been paid for the vehicles identified through the later AFC comparison, Mr. Moussa admitted: "No, I'm not aware if they had already been paid." Moussa Dep. 53:20–24.

The testimony became even clearer when Defendants addressed the ordinary lag between vehicle sale, title work, and retail funding.

> Q. So, it's fair to say that in any of these transactions, that there should be some level of loans in process, right, that you would be buying off where the car would have been sold, but the money hasn't been received? Is that a fair statement, sir?
>
> A. Yes, that—yes. *Moussa Dep. 57:5–10.*

That admission directly undermines Ocean Bank's premise that a vehicle already sold or titled necessarily generated proceeds that Benji Auto was fraudulently withholding. A vehicle could have been sold and titled while retail funding remained in process and while Benji Auto had not yet received the money necessary to pay AFC. That is ordinary work in process, not proof of fraud.

Ocean Bank's witness also admitted that Ocean Bank itself funds vehicles that are not physically on the dealership lot. Ocean Bank funds vehicles purchased from auctions before they reach the dealership, may fund vehicles located at mechanic shops, and funds demonstration vehicles that may be away from the premises. Moussa Dep. 73:22–74:19.

Ocean Bank therefore cannot convert the absence of a vehicle from the lot on a particular day into proof that Defendants previously made a knowingly false representation. The physical location of dealership inventory is dynamic, and Ocean Bank's own practices recognize that fact.

The audit process is equally important. Mr. Moussa admitted that an inventory audit is typically a condition of floor-plan lending. Moussa Dep. 60:9–21. Defendants maintain that Ocean Bank conducted an inventory audit immediately before completing and funding the AFC refinance. Although Mr. Moussa lacked the records necessary to confirm the specific audit date, he ultimately admitted that he could not testify that no pre-closing audit occurred. Moussa Dep. 58:14–60:7].

Ocean Bank also conducts audits after funding, typically every month.

> Q. And you do audits on a monthly basis, or how often do you audit the dealership to determine what cars were sold and what should be paid?
>
> A. Depends on the agreement, but typically monthly.
>
> Q. Okay. So, there would never be a month that would go by where you weren't paid up to date or know what needed to be paid for that month, correct?
>
> A. That's fair, yes. *Moussa Dep. 57:25–58:7.*

The consequences of that testimony are significant. If Ocean Bank's pre-closing audit identified a vehicle as absent, the discrepancy could have been reconciled before funding. If a vehicle was sold or left the lot after funding, Ocean Bank's next monthly audit would identify that vehicle and determine the payoff required. Mr. Moussa agreed that Ocean Bank would know within the monthly audit cycle which vehicles had been sold and what amounts needed to be paid.

Thus, even assuming an inventory discrepancy existed on a particular date, Ocean Bank's ordinary business process required it to be identified and reconciled no later than the following monthly audit. The existence of recurring audits and true-ups is fundamentally inconsistent with

Ocean Bank's attempt to characterize every temporary mismatch as evidence that Defendants fraudulently induced the original loan.

The relevant chronology is straightforward. Inventory changes continuously as vehicles are purchased, sold, transported, repaired, titled, and retail-financed. A vehicle may be sold and titled while payment remains in process. Ocean Bank typically conducts an audit before approving or funding a floor-plan transaction. Ocean Bank then audits monthly. Each audit determines which vehicles were sold and what amounts must be paid. Any vehicle no longer physically present or otherwise accounted for would be identified and required to be paid off through that recurring reconciliation process.

Ocean Bank's Complaint ignores each of these ordinary lending practices. It assumes that sold or titled vehicles necessarily generated proceeds already received by Benji Auto, assumes that every vehicle had to be physically present on the lot, and assumes that any temporary mismatch established intentional fraud at loan inception. Ocean Bank's own witness admitted the opposite. Rule 9011 did not permit Ocean Bank to omit these known industry and underwriting facts and plead ordinary work in process as actual fraud.

## THE DEPOSITION NEGATES THE COMPLAINT'S CONCLUSORY ALLEGATIONS OF KNOWLEDGE, INTENT, AND RELIANCE

Paragraph 10 of the Complaint alleges that Ocean Bank would not have made the loan but for Defendants' representations. Paragraph 11 alleges that Defendants knew their representations were false or acted with reckless disregard for the truth. Paragraph 12 alleges Defendants intended to create and foster a false impression. Paragraph 13 alleges false pretenses, false representations, or actual fraud. Paragraph 14 alleges a materially false written financial statement upon which Ocean Bank reasonably relied and which Defendants caused to be made with intent to deceive.

The deposition supplies no competent factual basis for those conclusions. Ocean Bank possessed the Quick Shift agreement and knew of the mortgage. It could not identify the representations allegedly made concerning AFC or inventory location. It did not investigate whether Benji Auto funded the Texas acquisition. It never asked about the acquisition or established that it changed Benji Auto's financial condition. It did not establish that Defendants falsely answered a request for litigation information. It treated ordinary work in process and monthly inventory reconciliation as fraud.

Those deficiencies concern the essential elements of Ocean Bank's causes of action. A claim under § 523(a)(2)(A) requires proof of a false representation or deceptive conduct, intent to deceive, justifiable reliance, and resulting loss. A claim under § 523(a)(2)(B) requires a materially false written statement respecting financial condition, reasonable reliance, and intent to deceive.

Ocean Bank cannot reasonably certify those elements when it cannot identify the statements, cannot establish that they were false when made, cannot establish that both Defendants made them, and cannot establish that the Bank lacked knowledge of the allegedly concealed facts.

## RULE 9011 REQUIRED AN OBJECTIVELY REASONABLE PRE-FILING INQUIRY AND PROHIBITS CONTINUED ADVOCACY OF UNSUPPORTED ALLEGATIONS

Federal Rule of Bankruptcy Procedure 9011(b) provides that, by presenting a pleading to the Court, an attorney certifies that, after an inquiry reasonable under the circumstances, the factual contentions have evidentiary support or, if specifically identified, are likely to have evidentiary support after a reasonable opportunity for investigation or discovery. The Rule applies when a paper is filed and when a party later advocates the assertions contained in it.

Bankruptcy Rule 9011 is substantially identical to Federal Rule of Civil Procedure 11 and imposes an objective standard of reasonable inquiry. See In re Mroz, 65 F.3d 1567, 1572 (11th Cir. 1995). Subjective assertions that an allegation was made in "good faith" do not excuse the failure to review documents already in the client's or attorney's possession or the decision to plead factual assertions before determining whether they were true.

The violations here satisfy that standard. The Quick Shift allegation was contradicted by a fully executed agreement possessed by Ocean Bank and counsel. The mortgage allegation ignored counsel's pre-closing identification and approval of the encumbrance. The supposed AFC and inventory-location representations could not be identified. The Texas acquisition was never investigated. The Truist lawsuit was never requested or analyzed for materiality. Ordinary floor-plan work in process and monthly reconciliations were treated as fraud without evidence that Benji Auto had received and withheld proceeds.

These were matters Ocean Bank and its counsel could have investigated before filing. The most powerful evidence, the executed Quick Shift agreement and the email identifying and approving the mortgage, was already in their possession.

Ocean Bank compounded the original violation by continuing to advocate the allegations after its Rule 30(b)(6) deposition. Rule 9011 is directed not only to filing but also to "later advocating" factual contentions. A party cannot preserve an unsupported fraud claim merely because its Complaint preceded the deposition confirming the absence of support.

**DEFENDANTS COMPLIED WITH RULE 9011'S SAFE-HARBOR REQUIREMENT**

Rule 9011(c)(1)(A) requires that a sanctions motion be made separately from other motions, describe the specific conduct alleged to violate Rule 9011(b), and be served upon the

opposing party at least twenty-one days before filing, thereby permitting withdrawal or correction of the challenged paper.

On August 6, 2026, Defendants served Ocean Bank and its counsel with this Motion pursuant to Rule 9011(c)(1)(A). More than twenty-one days have passed. Ocean Bank has not withdrawn the Complaint, amended the challenged allegations, or otherwise corrected the violations identified herein. Defendants have therefore satisfied the procedural prerequisites for relief under Rule 9011.

**SANCTIONS SHOULD BE IMPOSED AGAINST OCEAN BANK AND THE ATTORNEYS RESPONSIBLE FOR THE VIOLATIONS**

Rule 9011 authorizes the Court to impose an appropriate sanction upon the attorneys, law firms, or parties responsible for a violation. A sanction must be limited to what is sufficient to deter repetition of the conduct or comparable conduct by others similarly situated. Available sanctions include nonmonetary directives, monetary penalties, and an award of reasonable attorney's fees and expenses directly resulting from the violation.

The violation here is serious. Ocean Bank did not merely overstate an inference in an ordinary commercial pleading. It accused two individual debtors of obtaining a $5,000,000 loan through intentional fraud and seeks to deny them the fresh start afforded by bankruptcy.

Those allegations forced Defendants to conduct extensive discovery, prepare for and take Ocean Bank's corporate deposition, review the transactional record, investigate separate state-court proceedings, and defend against allegations Ocean Bank's own documents and testimony refute.

An appropriate sanction should include dismissal with prejudice of Ocean Bank's claims under 11 U.S.C. §§ 523(a)(2)(A) and (B), to the extent the Court determines dismissal is an appropriate nonmonetary sanction; an order precluding Ocean Bank from continuing to advocate

that Defendants failed to obtain the Quick Shift subordination agreement, concealed a mortgage unknown to Ocean Bank, made an identified representation that all inventory was physically located at the dealerships, represented Benji Auto was in good standing with AFC, or caused a material adverse change through the Texas acquisition without competent evidence supporting those assertions; an award of Defendants' reasonable attorney's fees and expenses incurred because of the violations, including the fees and costs associated with investigating the allegations, taking Ocean Bank's Rule 30(b)(6) deposition, preparing and serving this Motion, and prosecuting the sanctions proceeding; and such further monetary or nonmonetary sanctions as are sufficient to deter Ocean Bank and its counsel from filing and continuing to advocate serious fraud allegations without first conducting the inquiry required by Rule 9011.

## CONCLUSION

Ocean Bank's default claim against Benji Auto did not authorize it to transform a commercial lending dispute into a nondischargeability action based upon factual allegations contradicted by its own documents.

Ocean Bank alleged that Defendants failed to obtain the required Quick Shift subordination paperwork. Ocean Bank had the fully executed Intercreditor and Subordination Agreement. Its loan counsel approved that method of subordination. The agreement was attached to Quick Shift's lawsuit against Ocean Bank. The attorney who filed this adversary proceeding was already representing Ocean Bank in that lawsuit. Ocean Bank's corporate representative admitted the agreement existed and "backtracked" from the allegation.

Ocean Bank alleged it was deceived by an omitted mortgage. Its attorney identified the mortgage, reviewed it, wrote that it "should be ok," copied the Bank's account officer and

closing manager, and Ocean Bank funded the loan. Ocean Bank cannot reasonably claim reliance upon the supposed absence of information it already knew and approved.

Ocean Bank alleged affirmative representations concerning AFC and vehicle locations but could not identify any oral statement or written document containing them. It alleged the Texas acquisition materially affected Benji Auto but never determined who paid for the acquisition, did not establish any adverse change, and admitted it never asked. It treated an old Truist lawsuit as fraudulent concealment without establishing that litigation disclosures were requested or that the action was material.

Ocean Bank further treated ordinary work in process, title timing, pre-funding due diligence, monthly auditing, and inventory reconciliation as fraud. Its witness admitted that vehicles may be sold and titled while retail payment remains pending, that audits are customary before floor-plan funding, and that monthly audits identify sold vehicles and the amounts due. Any vehicle missed at closing would be identified and required to be paid off through the next monthly audit cycle.

These are not minor discrepancies. They are the factual foundation of the Complaint. Rule 9011 required Ocean Bank and its counsel to investigate before alleging fraud, review the agreements and communications already in their possession, and possess evidentiary support for factual contentions attributed personally to both Defendants. It prohibits their continued advocacy after Ocean Bank's own deposition demonstrated that support is absent.

Ocean Bank did not meet those obligations. Sanctions are warranted.

**WHEREFORE**, Defendants, BENJI URRA and ANGELA E. URRA, respectfully request that the Court enter an Order finding that Ocean Bank and the responsible attorneys violated Federal Rule of Bankruptcy Procedure 9011(b); dismissing Ocean Bank's claims under

11 U.S.C. §§ 523(a)(2)(A) and (B), or imposing appropriate evidentiary and nonmonetary sanctions precluding Ocean Bank from continuing to advocate unsupported factual contentions; awarding Defendants their reasonable attorney's fees and expenses directly resulting from the violations, including the fees and expenses incurred in conducting the Rule 30(b)(6) deposition, serving and prosecuting this Motion, and responding to the challenged allegations; retaining jurisdiction to determine the amount of Defendants' reasonable fees and expenses upon appropriate application and supporting documentation; and granting such further relief as the Court deems just, appropriate, and sufficient to deter repetition of the conduct.

Respectfully submitted,

GAMBERG & ABRAMS

By: /s/ Jared L. Gamberg
JARED L. GAMBERG, ESQUIRE
Florida Bar No. 302510
4651 Sheridan Street, Suite 200
Hollywood, Florida 33021
Telephone: (954) 981-4411
Email: jaredgamberg@gamberglaw.com
Counsel for Defendants

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served by email upon counsel for Ocean Bank on August 6, 2026, and, following expiration of the safe-harbor period, will be filed through the Court's CM/ECF system and served upon all counsel of record.

By: /s/ Jared L. Gamberg

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was filed with the Clerk of Court and served via ***electronically via CM/ECF to all parties registered to receive such notice and/or as noted on the attached service list,*** on this 31st day of August, 2026.

Dated: August 31, 2026.

Respectfully submitted,

I HEREBY CERTIFY that I am admitted to the Bar of the United States District Court of the Southern District of Florida and I am in compliance with the additional qualifications to practice in this Court as set forth in Local Rule 2090-1(A).

GAMBERG & ABRAMS
*Counsel for Defendants*
1213 S.E. Third Avenue, Second Floor
Fort Lauderdale, Florida 33316
Telephone: (954) 523-0900
E-mail: tabrams@tabramslaw.com
By: /s/ Thomas L. Abrams
Thomas L. Abrams, Esquire
Florida Bar No. 764329

GAMBERG & ABRAMS
4651 Sheridan Street, Suite 200
Hollywood, Florida 33021
Telephone: (954) 981-4411
Fla. Bar No: 302510
By: /s/Jared L. Gamberg
Jaredgamberg@gamberglaw.com
vdelponte@gamberglaw.com

## SERVICE LIST

***Notice Service via CM/ECF electronic filing***
The following is the list of **parties** who are currently on the list to receive email notice/service via CM/ECF for this case:

Peter A Tappert, Esq. on behalf of Plaintiff Ocean Bank
ptappert@wdpalaw.com, service@wdpalaw.com
Brian S Dervishi on behalf of Plaintiff Ocean Bank
bdervishi@wdpalaw.com, service@wdpalaw.com
*(Counsel for Plaintiff)*

By: /s/ Thomas L. Abrams
Thomas L. Abrams, Esquire

# EXHIBIT
# "A"

# INTERCREDITOR AND SUBORDINATION AGREEMENT

This Intercreditor and Subordination Agreement (this "Agreement") is made and entered as of April 17, 2025 (the "Effective Date") between Quick Shift Capital, LLC, a Florida Limited Liability Company ("Existing Lender"), Ocean Bank, a Florida banking corporation ("New Lender"), (collectively the "Lenders" and each individually a "Lender"), and Benji Auto Sales Corp., a Florida corporation ("Borrower").

## RECITALS:

WHEREAS, Existing Lender has extended a line of credit to Borrower in the maximum principal amount of $5,000,000.00 (the "Existing Loan"), which has a current outstanding principal balance of approximately $4,558,500.00 as of the date hereof (the "Current Outstanding Balance"), pursuant to that Loan and Security Agreement dated as of August 24, 2024 (as amended, restated, supplemented or otherwise modified from time to time, the "Existing Loan Agreement");

WHEREAS, to secure the obligations under the Existing Loan Agreement, Borrower has granted Existing Lender a Security Interest in substantially all of Borrower's assets, as evidenced by a UCC-1 Financing Statement filed with the Florida Secured Transaction Registry on August 29, 2024 as Filing No. 202402304276 (the "Existing UCC-1);

WHEREAS, New Lender has agreed to extend credit a line of credit to Borrower in the maximum principal amount of $5,000,000.00 (the "New Loan") pursuant to that certain Loan and Security Agreement dated as of April 17, 2025 (as amended, restated, supplemented or otherwise modified from time to time, the "New Loan Agreement");

WHEREAS, to secure the obligations under the New Loan Agreement, Borrower has agreed to grant New Lender a Security Interest in substantially all of Borrower's assets;

WHEREAS, the parties desire to establish their respective rights and priorities with respect to the Collateral securing the obligations under the Existing Loan Agreement and the New Loan Agreement;

NOW, THEREFORE, in consideration of the premises and of the mutual covenants and agreements herein contained the parties hereto agree as follows:

1. DEFINITIONS.

As used herein, the following terms shall have the following meanings:

a. "Existing Lender Financed Inventory" means all Inventory of Borrower that has been and is hereafter Specifically Financed by Existing Lender under the Existing Loan Agreement, as identified in the records maintained by Existing Lender, together with all Proceeds which shall include all motor vehicles that any Buyer of the Existing Lender Financed Inventory provides to Borrower as a trade-in vehicle towards the purchase and sale of Inventory that qualifies as Existing Lender Priority Collateral.

b. "Existing Lender Priority Collateral" means all Existing Lender Financed Inventory existing prior to and after the Effective Date of this Agreement.

**EXHIBIT 1**

c. "Inventory" shall mean motor vehicles, trailers, parts and accessories therefore, and various other types of personal property purchased or otherwise acquired by Borrower for resale or lease to third persons.

d. "New Lender Financed Inventory" means all Inventory of Borrower that has been Specifically Financed by New Lender under the New Loan Agreement, as identified in the records maintained by New Lender, together with all Proceeds thereof.

e. "New Lender Priority Collateral" means the New Lender Finance Inventory and all of Borrower's now owned or hereafter acquired assets and property, including, without limitation, all Inventory, Equipment, Accounts, General Intangibles, Deposit Accounts, Investment Property, Instruments, Documents, Chattel Paper, Supporting Obligations, Letter-of-Credit Rights, Commercial Tort Claims, and all Proceeds and products of the foregoing, but excluding any one or more of the above to the extent that any such item is a part of the Existing Lender Priority Collateral.

f. "Proceeds" shall have the meaning given to such term under the UCC which shall include all Proceeds of or relating to Inventory, including amounts due from the retail buyers thereof, chattel paper, insurance Proceeds, and all Proceeds in whatever form, relating to the disposition of Inventory and all credits, accounts, and general intangibles due or to become due to Borrower from the manufacturer(s) of such Inventory.

g. "Specifically Financed" shall mean the financing of a particular motor vehicle unit of Inventory by either Lender when (i) such Lender gives new value to Borrower incurred as all or part of the price of the Inventory or (ii) for value given to enable the Borrower to acquire rights or the use of the motor vehicle unit if the value is in fact so used.

h. "Subordinated Collateral" means all Collateral in which Existing Lender has a Security Interest, other than the Existing Lender Priority Collateral.

2. SUBORDINATION AND PRIORITIES.

a. **Subordination by Existing Lender and Recognition of Existing Lender's Priority Collateral.**

i. Existing Lender hereby subordinates its Security Interest in the Subordinated Collateral to the Security Interest of New Lender therein. Existing Lender acknowledges that New Lender shall have a senior-priority Security Interest in the New Lender Priority Collateral regardless of the time of attachment or perfection of such Security Interest, including, without limitation, the filing the Existing UCC-1 Financing Statement. New Lender acknowledges that Existing Lender shall have a senior-priority Security Interest in the Existing Lender Priority Collateral regardless of the time of attachment or perfection of such Security Interest, including, without limitation, the filing or lack thereof of the any UCC-1 Financing Statement. Each Lender agrees that (i) it will not challenge or question or support any other Person in challenging or questioning in any proceeding the validity or enforceability of obligations owing to either Lenders or the Existing Loan Agreement or New Loan Agreement or the validity, attachment, perfection or priority of any Security Interest under any either of the Loan Agreements or the validity or enforceability of the priorities, rights or duties established by or other provisions of this Agreement.

b. **Security Interests In Inventory.**



#519921329_v4

i. Each Lender shall have a senior and prior Security Interest in motor vehicle units of Inventory that heretofore have been or are hereafter Specifically Financed by each such Lender for Borrower and the Proceeds thereof; provided, however, that any unit of Inventory that was Specifically Financed and for which all amounts owing on such unit of Inventory have been indefeasibly repaid in full to Lender (including, without limitation, all fees, interest and other expenses owed to Lender with respect to such Inventory), shall no longer be considered Specifically Financed as to the repaid Lender.

ii. Each Lender may perfect or cause to be perfected its Security Interest in or lien on motor vehicle units of Inventory whether by Uniform Commercial Code filing, possession, or otherwise, and Borrower shall take such action as may be necessary to permit and enable each Lender to achieve such perfection.

c. Borrower agrees that Borrower shall neither accept nor seek any financing from any Person other than each Lender in connection with any of Borrower's Inventory including financing that may qualify as Specifically Financed financing in any Inventory; nor will Borrower accept or seek any financing from both Lenders as to any single item of Inventory. Violation of these promises by Borrower shall constitute a breach of this Agreement and the Existing Loan Agreement and the New Loan Agreement between Borrower and each Lender.

i. In the event of any liquidation, sale, or other disposition of any Inventory that was Specifically Financed by either Lender, the Proceeds shall be subject to the priorities contained in this Agreement and paid to the Lender who holds the rights to the Specifically Financed Inventory and all Proceeds thereof.

3. ENFORCEMENT.

a. At any time after the occurrence of an event of default under the New Loan Agreement, New Lender shall have the exclusive right to take enforcement actions with respect to the New Lender Priority Collateral, and Existing Lender shall not take any enforcement action with respect to such Collateral without the prior written consent of New Lender.

b. At any time after the occurrence of an event of default under the Existing Loan Agreement, Existing Lender shall have the exclusive right to take enforcement actions with respect to the Existing Lender Priority Collateral, and New Lender shall not take any enforcement action with respect to such Collateral without the prior written consent of Existing Lender.

c. Borrower acknowledges that notwithstanding anything to the contrary in either the Existing Loan Agreement or the New Loan Agreement, any event of default committed in either of these agreements shall constitute an event of default under the other Lender's loan agreement.

d. Each Lender agrees to reasonably cooperate with the other Lender in connection with any enforcement action undertaken by such other Lender with respect to Collateral in which such other Lender has a senior Security Interest, including executing such documents and taking such actions as may be reasonably requested by such other Lender to effectuate such enforcement action, however, such cooperation shall neither include being required to or having to expend any out-of-pocket costs or incur and attorney's fees by having to engage counsel in order to effect such cooperation.

e. Any Proceeds received by either Lender from the disposition of Collateral in which the other Lender has priority as provided in this Agreement shall be held in trust by the Lender who has

received such Proceeds, shall remain segregated from such Lender's assets and shall be promptly paid over to such other Lender.

4. REPRESENTATIONS AND COVENANTS.

a. Existing Lender represents that it is the holder of the Security Interest granted by Borrower pursuant to the Existing Loan Agreement and has not assigned or otherwise transferred such Security Interest.

b. New Lender represents that it is the holder of the Security Interest granted by Borrower pursuant to the New Loan Agreement and has not assigned or otherwise transferred such Security Interest.

c. Each Lender agrees to provide the other Lender with written notice upon the occurrence of an event of default under its respective loan documents within five (5) business days after such Lender becomes aware of such default. Notwithstanding the preceding sentence, a failure by either Lender to provide such timely notice shall neither serve to effect either a default under this Agreement, permit any cause of action for damages or breach of contract nor adversely affect the priorities established by this Agreement.

d. Existing Lender shall not increase the maximum principal amount of the Existing Loan as expressed in the Recitals without the prior written consent of New Lender.

e. New Lender shall not increase the maximum principal amount of the New Loan as expressed in the Recitals without the prior written consent of Existing Lender.

f. Existing Lender agrees to file a new UCC-1 Financing Statement the timing of which will be after any filing by New Lender resulting in Existing Lender having one Financing Statement filed prior to and another Financing Statement filed after the Financing Statement filed by New Lender. After a period of four (4) months from the date of the filing of the latter Financing Statement Existing Lender will file a UCC-3 Financing Statement terminating the effectiveness of its prior filed Financing Statement. This provision is conditioned upon no other party having filed a Financing Statement the result of which Existing Lender's latest filing will not result in Existing Lender holding a duly perfected Security Interest in the next immediate priority to that of New Lender based on perfection governed by the filing of a Financing Statement.

g. Borrower agrees that the total available maximum principal amount of the Existing Loan, which is in the approximate amount of the Current Outstanding Balance shall be reduced to $3,000,000 (the "Revised Principal Outstanding Balance") within thirty (30) days from the Effective Date.

h. Borrower and Existing Lender agree that the total availability under the Existing Loan (the "Availability) shall be capped at the Revised Principal Outstanding Balance Amount as of the Effective Date. Upon reduction of the Current Outstanding Balance after the Effective Date, the Availability shall continue to be capped at the then Current Principal Outstanding Balance Amount until the Outstanding Balance is reduced to Revised Principal Outstanding Balance Amount, at which point the total availability under the Existing Loan shall be permanently reduced to Revised Principal Outstanding Balance Amount (i.e., $3,000,000) until the New Loan is satisfied in full.

5. TERMINATION.

a. This Agreement shall remain in force and effect indefinitely until the full and indefeasible payment all monetary and non-monetary obligations owing to a Lender are satisfied and an authorized representative of a Lender has filed UCC financing statement terminating the effectiveness of all UCC filings made by a Lender on Borrower. Notwithstanding the foregoing: if, after repayment of all monetary and non-monetary obligations owing to a Lender and termination of all UCC financing statements made by a Lender on Borrower, Borrower thereafter becomes liable to a Lender on account of any payment made to a Lender shall for any reason be required to be returned or refunded by a Lender, this Agreement shall thereupon in all respects become effective with respect to such subsequent or reinstated obligations, without the necessity of any further act or agreement between Lenders.

6. BANKRUPTCY OF BORROWER:

a. This Agreement shall continue in full force and effect notwithstanding the commencement of any proceeding under the Bankruptcy Code or any other applicable Bankruptcy Law by or against the Borrower or any Grantor. If Borrower shall become subject to a case (a "***Bankruptcy Case***") under the Bankruptcy Code and shall, as debtor-in-possession, move for approval of financing ("***DIP Financing***") to be provided by one or more lenders (the "***DIP Lenders***") under Section 364 of the Bankruptcy Code or the use of cash collateral under Section 363 of the Bankruptcy Code, either Lender may raise any objection to any such financing or to the Security Interests on the Collateral securing the same ("***DIP Financing Liens***") or to any use of cash collateral that constitutes Collateral.

b. No Person is a third-party beneficiary of this Agreement and no trustee in bankruptcy for, or bankruptcy estate of, or unsecured creditor of, any Borrower will have or acquire or be entitled to exercise any right of a Lender under this Agreement, whether upon an avoidance or equitable subordination of a Security Interest held by a Lender, or otherwise.

7. MISCELLANEOUS PROVISIONS.

a. All notices hereunder, unless otherwise provided above, shall be in writing and shall be deemed to be properly given if sent by certified U.S. mail or recognized overnight delivery service, addressed to the party for whom it is intended at its address hereinafter set forth, or by telephonic facsimile communication or electronic mail promptly confirmed in writing. Any party hereto may designate a change of address by written notice to the others, given at least ten (10) days before such change of address is to become effective.

If to New Lender:

Ocean Bank
780 NW 42nd Ave.
Miami, FL, 33126
Attn: Javier Perez
Email: javperez@oceanbank.com

If to Existing Lender:

Quick Shift Capital, LLC
2200 Butts Rd
Suite 240
Boca Raton, FL 33431

Attn: Zach Green
Email: zach@quickshiftcapital.com

If to Borrower:
Benji Auto Sales Corp.
3805 S St Rd 7
West Park, FL 33023
Attn: Benjamin Urra Jr.
Email: Benjamin jr@benjiautosales.com

b. Borrower acknowledges and agrees to the terms and provisions of this Agreement

c. This Agreement is made and entered into under the laws of the state of Florida, and the laws of that state (without giving effect to the principles of conflicts of laws thereof) shall govern the validity, interpretation and enforcement hereof and the performance by the Lenders of their respective duties and obligations hereunder.

d. This Agreement contains the entire agreement of the parties hereto with respect to the subject matter hereof and may be amended only by a writing executed by all parties hereto.

e. Terms used in this Agreement that are defined in Section 1 shall have the meaning set forth in said section and no other. Said definitions shall, where applicable, also apply in the plural and past tense of said terms. All capitalized terms used in this Agreement shall have the meanings ascribed to such terms in the Uniform Commercial Code ("UCC") as adopted by the State of Florida:

f. The provisions of this Agreement shall inure to and be binding upon the parties hereto and their respective successors and assigns. The Lenders do not intend that this Agreement will benefit or create any right or cause of action in or on behalf of Borrower or any other third party. In the event either Lender were to seek to assign in whole or in part, or in the event that either Lender merges with any other Person and such Lender is not the surviving entity after completion of the merger, such Lender shall be obligated to get the express written acknowledgement of the assignee or surviving merger entity that such entity will agree to be bound by the provisions of this Agreement.

g. This Agreement may be executed in counterparts, each of which shall be deemed an original, but which together shall constitute one and the same Agreement. A genuinely signed document that contains a facsimile or electronic signature shall be valid and enforceable to the same extent as a document with an original signature. Each party agrees to execute and deliver such additional documents and instruments as may be necessary or appropriate to fully effectuate the terms and provisions of this Agreement so long as the provision of such additional documents and instruments is without costs or expenses to the non-requesting Lender.

h. If any provision of this Agreement shall be held invalid or unenforceable, such invalidity or unenforceability shall attach only to such provision and shall not affect or render invalid or unenforceable any other provision of this Agreement.

i. No failure or delay by either Lender in exercising any right, power or remedy under this Agreement shall operate as a waiver thereof, nor shall any single or partial exercise thereof preclude any other or further exercise thereof or the exercise of any other right, power or remedy.

j. The relationship between the Lenders is, and at all times shall remain solely that of intercreditor of Borrower. Lenders shall not under any circumstances be construed to be partners or joint venturers of one another; nor shall the Lenders under any circumstances be deemed to be in a fiduciary relationship with one another or to owe any fiduciary duty to one another outside the duties expressly provided in this Agreement. Lenders do not undertake or assume any responsibility or duty to one another to select, review, inspect, supervise, pass judgment upon or otherwise inform each other of any matter in connection with Borrower's property, any Collateral held by either Lender or the operations of Borrower. Each Lender shall rely entirely on its own judgment with respect to such matters, and any review, inspection, supervision, exercise of judgment or supply of information undertaken or assumed either Lender in connection with such matters is solely for the protection of such Lender.

k. Should a dispute arise between the Lenders, they shall confer expeditiously to attempt to resolve the dispute. If they are unable to resolve the dispute, and the dispute relates to an isolated issue or issues and not to the whole of the arrangement, and the dispute can be severed from the ongoing process, the Lenders shall, within 10 days of impasse, select a mediator to assist the process of resolution. Mediation shall be conducted as expeditiously as the circumstances require but no later than 30 days after the impasse. If the Lenders are unable to resolve the dispute at mediation, either Lender may initiate an action to resolve the dispute. Pre-suit mediation shall not be required if the dispute relates to the whole of the relationship and cannot be severed from the ongoing relationship.

l. This Agreement is intended to define the rights and duties of the Lenders and it is not intended that any third party shall benefit from this Agreement. If the effect of any provision of this Agreement would be to give any third party a priority status to which that party would not otherwise be entitled, that provision shall, to the extent necessary to avoid that priority, be given no effect and the rights and priorities of the Lender shall be determined in accordance with applicable law.

m. The Borrower agrees to defend, indemnify and hold harmless each Lender and their respective directors, officers, employees, attorneys, successors and assigns from and against any and all claims, losses, liabilities, costs, damages and expenses, including, without limitation, reasonable legal and accounting fees, arising out of or in any way related to this Agreement or any action or omission of the Lender in complying with the terms of this Agreement.

n. THE PARTIES HEREBY KNOWINGLY AND VOLUNTARILY WAIVE THE RIGHT EITHER MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION OR DISPUTE BASED HEREON OR ARISING OUT OF OR UNDER OR IN CONNECTION WITH THIS AGREEMENT, OR WITH ANY COURSE OF CONDUCT, COURSE OF DEALING, ORAL OR WRITTEN STATEMENT OR ACTIONS OF EITHER OF THE PARTIES. THIS PROVISION IS A MATERIAL INDUCEMENT FOR EACH PARTY TO ENTER INTO THIS AGREEMENT.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed as of the day and year first above written.

**OCEAN BANK**
a Florida banking corporation

By: [signature]
Name: Javier Perez
Title: VP & Branch Manager

**QUICK SHIFT CAPITAL LLC**
a Florida limited liability company

By:____________________
Name:____________________
Title:____________________

**BENJI AUTO SALES CORP.,**
a Florida corporation

**By:** [signature]
**Name:** Benji Urra
**Title:** Pres

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed as of the day and year first above written.

**OCEAN BANK**
a Florida banking corporation

By: ______________________
Name: ______________________
Title: ______________________

**QUICK SHIFT CAPITAL LLC**
a Florida limited liability company

By: ______________________
Name: ______________________
Title: President

**BENJI AUTO SALES CORP.,**
a Florida corporation

**By:** ______________________
**Name:** ______________________
**Title:** ______________________



#519921329_v4